United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL VLADIMIR ACOSTA,<br><br>Defendant. | Case No.: CR-13-71040-MAG-1 (KAW)<br><br>DETENTION ORDER |

## I. BACKGROUND INFORMATION

Defendant Michael Vladimir Acosta is charged by criminal complaint with violations of 21 U.S.C. §§ 841(a), 841(b)(1)(C) (possession with intent to distribute a controlled substance); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking offense). On September 4, 2013 the United States moved for Defendant's detention pursuant to the Bail Reform Act and requested a hearing as permitted by 18 U.S.C. § 3142(f). Pretrial Services prepared a full bail study and recommended that Defendant be detained. The court conducted an initial detention hearing on September 12, 2013 and a continued detention hearing on September 13, 2013. Defendant was present, in custody, and represented by Assistant Federal Public Defender Ellen Leonida. Assistant United States Attorney Cynthia Frey appeared on behalf of the Government. For the reasons set forth below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or

DETENTION ORDER
CR-13-71040-MAG-1 (KAW)                   1

danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

     A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of any other person or the community. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

     In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and the Weight of the Evidence**

Defendant is charged with violations of 21 U.S.C. §§ 841(a), 841(b)(1)(C) (possession with intent to distribute a controlled substance) and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking offense). These offenses give rise to a rebuttable presumption of

detention, *see* 18 U.S.C. § 3142(e)(2), as Defendant is charged with a crime of violence, *see* 18 U.S.C. §§ 3156(a)(4), and is facing a five-year minimum sentence. However, even if the crimes charged here did not give rise to such a presumption, the record in this case nonetheless warrants detention.

On or about August 14, 2008, Defendant was operating a vehicle when he was pulled over by law enforcement. Once Defendant pulled over, and law enforcement had an opportunity to stop behind the vehicle operated by Defendant, Defendant sped off. This resulted in a high-speed chase through a residential neighborhood. The vehicle reached speeds of up to 50 miles per hour. The chase continued until Defendant crashed through the metal fence of a residential property, then a front yard, and finally onto a parked vehicle. Defendant was taken into custody. At that time, law enforcement also located a 9 mm Tariq semi-automatic firearm, serial number 1042381, a few feet west of where Defendant was taken into custody. The firearm was loaded, with six rounds of ammunition in the magazine and one round of ammunition in the chamber. Due to the severity of the crash, Defendant was transported to a local hospital.

The weight of the evidence, while the least important factor, also supports detention. Here, Defendant was pulled over by law enforcement. Law enforcement observed Defendant fleeing, commencing a high speed chase, and stopping only upon crashing into a parked vehicle. While at the hospital where Defendant was being treated for the injuries he sustained during that crash, Defendant informed law enforcement that he had the firearm recovered at the scene for his protection. Defendant also informed law enforcement that he had powder heroin on his person. Defendant then removed 16 multi-colored balloons containing suspected heroin from his right shorts pocket. Law enforcement tested the contents of the balloons, which tested positive for heroin. The approximate total net weight of the substance was 5 grams. Defendant claimed that the heroin was for his personal use.

### B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community

Defendant is 19 years old. He lives with his mother in Oakland, California. Defendant did not graduate from high school, and he is informally employed at a restaurant where he "helps

DETENTION ORDER
CR-13-71040-MAG-1 (KAW)                                3

out" a few days a week.  Defendant has also been diagnosed with attention deficit disorder, but he has not received treatment for his condition since he was 16 years old.  Despite his young age, Defendant has a lengthy history of drug abuse.  He first consumed alcohol when he was 13 years old, and from that time, consumed it every weekend until he turned 17.  He used marijuana from the time he was 14 to the time he was 16, with a frequency of one "blunt" every two days.  He used ecstasy on two separate occasions in 2010.  He used cocaine two to three times per week from the age of 15 until August 2013.  He snorted heroin on a daily basis from March 2013 until the day of his arrest.  He consumed methamphetamine on one occasion when he was 14.  He also consumed syrup with liquid heroin two months ago for a period of one week.

In addition, Defendant has a juvenile conviction for possessing a dangerous weapon.  That conviction dates back to 2010.  The police report documenting the incident shows that Defendant was one of four passengers in a vehicle.  All passengers admitted to being members of the "Border Brothers" gang and were confirmed as such by law enforcement officers at the scene of the incident.  In that instance, Defendant did not attempt to evade law enforcement.  However, he was in possession of a Winchester sawed-off shotgun, serial number 317486, with five live rounds of 12-gauge ammunition and one spent shell casing.  Defendant also admitted that the weapon was his.  In 2011, Defendant was also charged with first-degree robbery.

Defendant has strong family ties to the community.  He has resided in Oakland his entire life, except for a brief period (ending in March 2012) during which he resided in Nevada.  Defendant maintains daily contact with his mother.  He also apparently maintains contact with his grandmother and his girlfriend.

However, his ties to the community alone do not resolve the question of whether Defendant poses a danger to any person or the community.  Defendant is a confirmed, known member of the Border Brothers gang.  Defendant has admitted his affiliation with the gang to law enforcement.  Defendant has three tattoos with gang-related insignia.  This gang has extensive territory in Oakland.  The gang is known for violence and has various local rival gangs.

On these facts, there is a high risk that Defendant will continue to possess firearms and engage in other drug-related behavior.  When considered along with the manner in which he

DETENTION ORDER
CR-13-71040-MAG-1 (KAW)                                          4

attempted to evade law enforcement in this instance and his other violent crimes, Defendant's conduct demonstrates that he would pose a danger to any person or the community. *See Sykes v. United States*, --- U.S. ---, ---, 131 S. Ct. 2267, 2273, 180 L. Ed. 2d 60, 70 (2011) ("When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense."); *U.S. v. Leon*, 766 F.2d 77, 80 (2d. Cir. 1985) (noting that "it is clear that the harm to society caused by narcotics trafficking is encompassed with Congress' definition of 'danger.'") (citation omitted); S. REP. NO. 98-225, at 13 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3188-89 ("[T]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'") (footnote omitted).

### C. Risk of Nonappearance

Factors that indicate Defendant poses a risk of nonappearance include, as described above, his gang affiliation, his prior fleeing from police by commencing a dangerous high-speed chase through a residential neighborhood which ultimately resulted in a crash and destruction of private property, his illicit drug use, and his mental health issues. Mitigating factors include Defendant's familial ties to the district and the length of his residency in the community. Defendant adds that he completed a one-year drug treatment program in Nevada, and that this should weigh in his favor. However, Defendant continued to participate in gang activity once he left Nevada and returned to Oakland and engaged in conduct that resulted in the very serious charges and the minimum five-year prison sentence he now faces.

Defendant's mother, Defendant's grandmother, and Defendant's girlfriend are willing to act as sureties. However, Defendant was living with his mother at the time he committed his prior offenses in 2010 and 2011 as well as the instant offense. Defendant's girlfriend has been dating Defendant for 1.5 years. The court finds that neither Defendant's mother, nor Defendant's grandmother, nor Defendant's girlfriend would be grandmother viable sureties. Defendant has continued to engage in criminal conduct for years, and it is therefore unlikely that either of the

DETENTION ORDER
CR-13-71040-MAG-1 (KAW)                              5

proposed sureties would provide sufficient moral suasion to ensure that Defendant complied with any conditions of release. In light of all this, the risk of Defendant's nonappearance is significant.

### III. CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and a risk of nonappearance, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: September 17, 2013

_Kandis Westmore_
KANDIS A. WESTMORE
United States Magistrate Judge

DETENTION ORDER
CR-13-71040-MAG-1 (KAW)                     6